**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARTIN J. WALSH, *the Secretary of Labor*, ) <br> ) <br>               Plaintiff,  ) <br> ) <br>   vs.                               ) <br> ) <br> LOCAL 688, INTERNATIONAL  ) <br> BROTHERHOOD OF TEAMSTERS,  ) <br> ) <br>               Defendant.  ) | Case No. 4:21-cv-902-MTS |

**MEMORANDUM AND ORDER**

      Before the Court are the parties' cross Motions for Summary Judgment, Docs. [23] and [26], pursuant to Federal Rule of Civil Procedure 56.  This dispute involves a union officer election held by Defendant Local 688, International Brotherhood of Teamsters (the "Union").  Plaintiff Martin Walsh, the Secretary of Labor, brought this action pursuant to Title IV of the Labor Management Reporting and Disclosure Act ("LMRDA") of 1959, 29 U.S.C. §§ 481–84, requesting a judgment declaring the November 2020 election of union officers conducted by the Union void and directing the Union to conduct a new election for these offices under the Secretary's supervision.  Plaintiff asserts that the Union violated Sections 481 (b) and (c) of the LMRDA by failing to provide adequate safeguards to ensure a fair election and to conduct the election by secret ballot.  29 U.S.C. §§ 481(b)–(c).  For reasons discussed below, the Court denies the Union's Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment.  The Court further holds Plaintiff is entitled to an order setting aside the contested election and directing a new election be scheduled and conducted under the Secretary's supervision.

1

I.     BACKGROUND[1]

The Union is a labor organization with approximately 6,800 active members who work in a variety of industries throughout the eastern half of Missouri, including the St. Louis, Missouri metropolitan area.  The Union holds regular membership meetings based on industry or shop.

The Union held its election of officers in November 2020.  Members of the fair election committee ("FEC") were responsible for overseeing voting.  Polling occurred throughout November 2020 at the regularly scheduled membership meeting for each shop.[2]  As such, there were over 80 polling events during the November 2020 election, and polling took place at various types of locations, including shop lunchrooms, Elks lodges, parking lots, and restaurants.  There was one "catch all" polling site, located at the 688 union hall, that was open on November 28, 2020, and was available to any member who missed voting at their regular shop meeting elections.

The FEC members were never given training on how to conduct an election in a way that would ensure members voted in secret.  The Union did not implement uniform rules or procedures across all polling sites that would ensure all members were required to vote in secret.  There were no uniform instructions given to voters across all polling sites on how to vote a secret ballot.  There were no voting booths or partitions used, no rules prohibiting members from filling out their ballots while sitting together at the same table, and no rules prohibiting voters from discussing their votes while at the polling sites.  Members decided where to fill out their ballots.[3]  There is evidence

---

[1] For the purpose of summary judgment, the Court finds the facts to be as follows.  Facts disputed or immaterial to the Court's ruling have been omitted.
[2] The Business Agent ("BA") for each shop is responsible for running the meeting and suspending regular business so that members could vote.  After the BA begins the meeting and reads the meeting agenda, the BA turns the meeting over to the FEC member to conduct the election. When the FEC member felt that voting had been open for a "reasonable time" they would turn the meeting back over to the BA to close voting.
[3] The Court notes evidence that the Union viewed ballot secrecy as an option left to the member, which if true, also violates the LMRDA.  *See Marshall v. Local Union 12447, United Steelworkers of Am.*, 591 F.2d 199 (3d Cir. 1978); *Brennan v. Loc. 3489, United Steelworkers of Am., AFL-CIO*, 520 F.2d 516, 522 (7th Cir. 1975) ("The act requires a mandatory secret ballot, not one permitting a voter to mark his ballot in secret with the danger of identification implicit in securing that secrecy.").

voters marked their ballots on each other's backs, on the tailgate of trucks, on their hands while walking to the ballot box, while sitting at tables with other voters, and in plain view of officials or other voters.

By the November 28, 2020, voting deadline, the Union received approximately 1,170 ballots out of a maximum of 6,800. After all of the votes were tallied, the incumbent slate received approximately 86-percent of the votes while the Members For Change slate received approximately 14-percent of the votes.

A member of the Union filed a complaint with Plaintiff, the Secretary of Labor, based on the voting conditions. Plaintiff filed a two-count Complaint alleging that the Union violated the LMRDA during the November 2020 election. Doc. [1]. Presently before the Court, both parties move for summary judgment. Doc. [23] and [26].

## II.   STANDARD

The standards applicable to summary judgment motions are well settled and do not change when both parties have moved for summary judgment. *See Tower Rock Stone Co. v. Quarry & Allied Workers Loc. No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). The Court views any factual disputes in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and "must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." *Willert Home Prod., Inc. v. Driveline Retail Merch., Inc.*, 4:20-cv-

3

01151-MTS, 2022 WL 485278, at *1 (E.D. Mo. Feb. 17, 2022).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A party will not withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [his or her] own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007).  But,  where sufficient evidence supports a factual dispute, it is up to the jury to resolve the dispute at trial. *Liberty Lobby*, 477 U.S. at 248–49.

**III.   DISCUSSION**

Plaintiff claims the Union violated Section 481 of the LMRDA during the November 2020 election.  A violation of Section 481 that "may have affected the outcome of an election" requires the Court to declare a contested election void and order a new supervised election.  29 U.S.C. § 482(c).  Plaintiff claims the Union violated Sections 481 (b) and (c) by failing to conduct the November 2020 election by secret ballot and provide adequate safeguards to ensure a fair election. *See* 29 U.S.C. § 481(b)–(c).  The Union does not contest these violations but instead argues the violations did not affect the outcome of the election.

The U.S. Supreme Court established a burden-shifting framework for analyzing Section 481 violations. *See Wirtz v. Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. 492, 506–07 (1968).  The plaintiff bears the initial burden of proving, by a "preponderance of the evidence," that the union violated Section 481.  29 U.S.C. § 482(c).  Once the plaintiff proves a Section 481 violation, the plaintiff has established a *prima facie* case that the violation "may have affected the

4

outcome of the election." *Wirtz*, 391 U.S. at 506–07; *Usery v. Stove, Furnace & Allied Appliance Workers Int'l Union of N. Am., AFL-CIO*, 547 F.2d 1043, 1046 (8th Cir. 1977) ("A proved violation of [Section] 401 will have the effect of establishing a prima facie case that the violation may have affected the outcome."). The union may rebut the presumption with "tangible," non-speculative evidence that the violation did not affect the election outcome. *Wirtz*, 391 U.S. at 507–08; *see also Acosta v. Loc. 41, Int'l Bhd. of Teamsters*, 4:18-cv-00381-HFS, 2020 WL 11563944, at *4 (W.D. Mo. Feb. 10, 2020) ("Effect is presumed from a violation unless the union meets its evidentiary burden to produce 'tangible evidence' that the election would not have been different absent the violation." (citing *Writz*, 391 U.S. at 507–08)). If the union fails to rebut the *prima facie* case, then the court must declare the challenged election void and order a new election, supervised by the Secretary of Labor. 29 U.S.C. § 482(c).

In the case here, the undisputed evidence establishes that the Union violated Sections 481(b) and (c) of the LMRDA by failing to conduct its November 2020 election by secret ballot or with adequate secrecy safeguards. *See* 29 U.S.C. § 481(b) (requiring the election of local union officers by "secret ballot"); *id.* at § 481(c) ("Adequate safeguards to insure a fair election shall be provided"). As such, the violations are presumed to have affected the outcome of the election. *Wirtz*, 391 U.S. at 506–07. The burden now shifts to the Union to show that the violations did *not* affect the outcome of the election. *Id.* The Union has not rebutted the presumption here.

First, rather than pointing to "tangible" evidence, as is required, see *Wirtz*, 391 U.S. at 507–08, the Union presents arguments based on a deep misunderstanding of the applicable legal standard. While the Union concedes there were Section 481 violations during the November 2020 election, it argues *Plaintiff* failed to produce evidence that the violations did affect the outcome of the election. *See, e.g.*, Doc. [31] at 7 ("While there may have been technical violations of the Act,

5

there is a lack of any substantial evidence to show it affected the outcome of the election."). But, as discussed *supra*, a Section 481 violation is presumed to have affected the outcome of the election. *Wirtz*, 391 U.S. at 506–07. The Union flips the burden-shifting framework on its head to require that, after Plaintiff establishes a violation, that Plaintiff must also take the additional step of putting forth tangible proof that the violation affected the result of the election. *See, e.g.*, Doc. [27] at 4 ("Plaintiff has not produced any evidence of material facts to show the election process was adversely affected so that the secrecy of balloting was violated or that any voter had a concern that other voters or members were aware of how that member voted or that any member was harmed in any way in the voting process."); Doc. [31] at 7 ("Plaintiff has been unable to develop any specific evidence to show the alleged inadequate election safeguards would have somehow affected the outcome of this election."). The Union is mistaken—and such a reading would overturn more than fifty years of Supreme Court precedent and ignore clear congressional intent. *Wirtz*, 391 U.S. at 505–07 (Congress decided against requiring that the violation "actually 'affected' the outcome" and "[s]ince any proof relating to effect on outcome must necessarily be speculative, we do not think Congress meant to place as stringent a burden on the Secretary").[4]

Under the same misunderstanding of the law, the Union also argues that Plaintiff presented insufficient evidence of actual breaches of secrecy because it pertains to just one polling location. *See, e.g.*, Doc. [31] at 7 ("This location was the only location of the more than eighty (80) voting sites where there was any direct evidence as to how voters were allowed to mark their election ballots."); Doc. [27] at 8 ("Plaintiff has no other evidence of this voting secrecy issue in this case"). In addition to again misunderstanding the legal standard, this statement ignores the factual record,

---

[4] Since *Wirtz*, courts focus not on whether anyone actually discovered how another voted, but rather that the potential existed. *See, e.g.*, *Local Union 12447*, 591 F.2d at 203 & n.10 ("Although there was no evidence that anyone saw how any union member voted, the court ruled that the union had violated the LMRDA because it was *possible* to observe how some voters had marked their ballots.").

6

which shows examples from numerous polling sites. *See, e.g.*, Doc. [23-3] at 11 (41:22–23) (at a Hardee's site, members were voting on each other's backs); Doc. [29-3] ¶ 40 (at CSI/UPS on November 8, multiple members voted at the same table at the same time); *Id.* ¶ 48 (at Pepsi drivers site on November 10, some members voted in their hand on the way to the ballot box); Doc. [33-1] at 8 (at union hall site on November 28, multiple members voted at the same table at the same time); *id.* at 13 (at Riviana Foods polling site on November 18, members voted at the ballot box in plain view of officials and observers).  Notably, courts have found these precise situations ones that violate the LMRDA.  *See, e.g.*, *Hodgson v. United Mine Workers of Am.*, 344 F. Supp. 17, 30 (D.D.C. 1972) (finding "lose polling procedures" such as marking ballots "on walls, chairs, windowsills, the backs of other voters, and other places other than a polling booth," voting under "crowded conditions," "in plain view of officials and observers," or "in groups at the same table or elsewhere in the polling place" did not meet the "minimum requirement" of secret polling); *Brennan v. Local 3489, United Steelworkers of Am.,* 520 F.2d 516, 522 (7th Cir. 1975) (holding the union violated the secret ballot requirement because voters cast their ballots together at shared tables where their votes could be observed by others).

The Union also incorrectly argues that the violations were "small violations" that could not have affected the outcome of the election.  Doc. [27] at 7.  But the severity or frequency of a violation is not legally relevant to whether the Union sufficiently rebutted the presumption.  *See Usery*, 547 F.2d at 1046 ("If there is only a single violation and a minimal one at that, it may be more easily rebutted, but it must be met by evidence which supports a finding that the violation did not affect the result.").  Regardless, violations that affect secrecy of the ballot are in no way minor.  *Bachowski v. Brennan*, 413 F. Supp. 147, 150 (W.D. Pa. 1976) (secrecy violations are "vital and substantive infringements of the Congressionally guaranteed right to a free and fair

7

election"); *Marshall v. Loc. Union 12447, United Steelworkers of Am., AFL-CIO*, 591 F.2d 199, 203 (3d Cir. 1978).

In an attempt to rebut the presumption, this time with actual evidence, the Union points to eight affidavits (the "Affidavits") from FEC members. *See* Doc. [27-1]. According to the Union, these members were responsible for voting at approximately 13 separate locations, and their Affidavits discuss and explain how the voting process occurred at each of these multiple sites, apparently without issue.[5]

The Affidavits fall wholly short of being the tangible evidence necessary to rebut the presumption that the violations affected the outcome of the election. Perhaps most notably, even amongst the sites the Union offers as evidence of exemplary voting procedures, there is undisputed, contradictory evidence that privacy may have been compromised. *Compare, e.g.*, Doc. [27-1] at 12 ¶¶ 3–5 (affidavit stating members voted one at a time at the ConAgra site on November 3, 2020), *with* Doc. [29-3] ¶ 39 (at the ConAgra site on November 3, 2020, there may have been a few times more than one member voted at the same table at the same time). Moreover, even if voting was exemplary at those locations, examples of just 13 locations is unpersuasive given the 80-plus sites where voting occurred. Further, even if the Union had presented affidavits showing majority of the voting locations were exemplary, given the nature of the violation here—widespread secrecy violations—such evidence would likely be insufficient to rebut the presumption. *See, e.g.*, *Donovan v. CSEA Loc. Union 1000, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 594 F. Supp. 188, 197 (N.D.N.Y. 1984), *aff'd in part, rev'd in part on other grounds*, 761 F.2d 870 (2d Cir. 1985) (expressing that a secrecy violation may affect voters both

---

[5] The Court notes there are sites the FEC members excluded from their affidavits. The affidavits address only a small subset of polling places these FEC members attended, while omitting any discussion of the other polling sites these FEC members attended, some of which have evidence of secrecy problems.

"in choosing to vote or not to vote and in selecting the particular candidate for whom to vote");[6] *Bachowski*, 413 F. Supp. at 150 (explaining secrecy violations are "of a type which may affect how a voter votes"); *Loc. Union 12447*, 591 F.2d at 205 (secrecy violations "chill the exercise of the voter's free choice").

The secrecy and safeguard violations here are based on the systemic lack of rules, FEC training, instructions, physical arrangement, or any other consistent mechanisms to protect ballot secrecy, all of which are undisputed. The Union puts forth nothing to rebut this evidence that the election may have been affected by these violations. The Affidavits serve only as evidence of what some individuals experienced but do nothing to show that the effect of the violations could not have been felt by others. *See, e.g.*, *Donovan v. Local 719, United Auto., Aerospace & Agr. Implement Workers of Am.*, 561 F. Supp. 54, 63 (N.D. Ill. 1982) (hypothesizing a situation where the union could easily demonstrate that its violation did not affect the outcome of the election where the Secretary's claim is simply that 20 union members voted twice, and the union contends that the winners' margin of victory was 2000 votes); *Wirtz*, 391 U.S. at 507–08 (providing an example of rebuttal evidence where an investigation showed only 20-percent of election votes were tampered with but the officers won by an 8-1 margin).[7] The Union misinterprets the standards by which a case such as this is to be judged. "It is not the duty of this court to engage in

---

[6] Here, approximately 1,170 members voted out of 6,800 members.
[7] The Union argues the 8-1 margin victory shows that the violations did not affect the election. *See* Doc. [27] at 9. But large margin victories are not tangible rebuttable evidence, especially given the nature of the violations here. *See, e.g.*, *Donovan v. CSEA Loc. Union 1000, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 594 F. Supp. 188, 197 (N.D.N.Y. 1984), *aff'd in part, rev'd in part on other grounds*, 761 F.2d 870 (2d Cir. 1985) (large margins were "meaningless" in terms of effect, as members might have voted differently with secret balloting); *Solis v. Commc'ns Workers of Am., AFL-CIO*, 766 F. Supp. 2d 84, 104 (D.D.C. 2011) (declining to conclude any secrecy violation would not have affected the outcome of the challenged elections because "the Court cannot ignore the possibility that some voters . . . may have been concerned about the secrecy of their ballots"); *Kelly v. Local No. B-183 of Intern. Alliance of Theatrical Stage Employees*, 566 F. Supp. 1199, 1202 (S.D. N.Y. 1983) (requiring new election by secret ballot, despite 8-1 margin, given "chilling effect"); *Brock v. Loc. 471, Hotel, Motel & Rest. Emps. & Bartenders Union, AFL-CIO*, 706 F. Supp. 175, 182 (N.D.N.Y.), *aff'd sub nom. Brock v. Loc. 471*, 888 F.2d 125 (2d Cir. 1989) (finding margin of defeat too speculative to rebut presumption).

the arithmetical exercise of tallying the precise number of union members whose vote was affected by the [violations] and those whose votes were not so affected." *Local 719*, 561 F. Supp. at 63. For this reason, courts typically do not allow unions to present a succession of members' testimony that their votes were not affected. *See, e.g.*, *id.* at 60 (twelve members' affidavits could raise "some doubt as to the effect of the violation," but were "not sufficient to rebut the Secretary's *prima facie* case that the secret ballot 'may have' affected the outcome of the election"). It is a matter of "great speculation one way or the other," and speculation is insufficient to rebut the presumption. *Usery v. Loc. Union No. 20, Sheet Metal Workers Int'l Ass'n, AFL-CIO*, 76-2420, 1980 WL 18722, at *3 (D.N.J. Mar. 26, 1980); *Wirtz*, 391 U.S. at 508 ("conjecture" insufficient to rebut presumption); *Chao v. Amalgamated Transit Union, AFL-CIO, CLC*, 141 F. Supp. 2d 13, 24 (D.D.C. 2001) (rejecting evidence that "would involve nothing but guesswork").

The undisputed factual record—undisturbed by the Affidavits—shows that the lack of uniform rules, voting instructions, or physical arrangement at the polling places directed at secrecy violated Section 481. The Union has presented no tangible, non-speculative evidence to demonstrate that the secrecy violations could not have affected the outcome of the November 2020 election. As such, the Court grants summary judgment in favor of Plaintiff and denies the Union's motion for summary judgment.

## CONCLUSION

Because the Union has not put forth evidence showing the Section 481 violations did not affect the election results, as is necessary to rebut Plaintiff's *prima facie* case, the Court finds that the violation may have affected the election under Section 481 of the LMRDA. The LMDRA unequivocally states the exclusive remedy in this situation is for the Court to declare the election void and direct a new election under supervision of the Secretary. 29 U.S.C. § 482(c). As such,

the Court declares the November 2020 election void and orders a new election under the supervision of the Secretary of Labor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [26], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [23], is **GRANTED**.

**IT IS FURTHER ORDERED** that the November 2020 election is void and a new election is ordered under the supervision of the Secretary of Labor.  The court will retain jurisdiction of this matter until a new election is held.  The parties are directed to file a status report within ninety (90) days of this Memorandum and Order.  A separate Judgment will accompany this Memorandum and Order.

Dated this 8th day of November 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE